**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| RAMONA TORRES-OCASIO<br><br>   Plaintiff<br><br>   v.<br><br>TEXACO PUERTO RICO, INC., ET AL<br><br>   Defendants | Civ. No. 06-1019 (PG) |

**OPINION AND ORDER**

Reviewing the several pending Motions in Limine (Docket No. 89, 91, 104, 131) filed by the parties to exclude expert witness reports and trial testimony, the Court now elaborates its reasoning for granting or denying them.

**DISCUSSION**

On December 6, 2003, plaintiff Ramona Torres-Ocasio slipped and fell while exiting the mini-market on the premises of defendant Texaco de Puerto Rico, Inc., on an area she alleges was wet with oil and water.  As a result of her fall Plaintiff suffered a right tibia and fibula fracture and was submitted to an open reduction and internal fixation of the fracture, which included the placement of nine screws and a metal plate on her right leg. Plaintiff was hospitalized from December 6, 2003 until February 5, 2004.

Plaintiff alleges that Texaco was negligent in failing to properly maintain its business premises in safe condition and that she is permanently disabled as a result of injuries caused by her fall.  Plaintiff seeks damages for physical and emotional injury as well as for medical expenses.  Defendants argue that the damages suffered by Plaintiff are a result of her own fault and/or negligence.

Plaintiff filed Motions in Limine to exclude the expert witness reports and trial testimony of: 1) Defendants' nephrology expert witness

Civ. No. 06-1019 (PG)                                                    Page 2

Dr. Warren B. Shapiro, 2) any reference to Plaintiff's eyesight, and 3) Defendants' orthopedic expert Dr. Marc H. Appel.  Defendants filed a Motion in Limine to exclude Plaintiff's expert witness reports and trial testimony of Gerri Penachio and Francisco E. Martinez.  The Court shall address the viability of each motion *seriatim*.

**I. Plaintiff's Motion in Limine to Exclude Defendants' Nephrology Expert Witness Dr. Warren B. Shapiro (Docket No. 89)**

Plaintiff argues that Dr. Shapiro's testimony violates the precepts established by Daubert v. Merrell Dow Pharmaceutical, 509 U.S. 578 (1993), and its progeny because his expert opinion is unreliable.  In particular, she argues that Dr. Shapiro's opinion is devoid of any reference to objective scientific standards, principles, or methodology; that it did not articulate the basis or reasons therefore, nor the data or standards he applied in its formation; and that it is connected to existing data only by Dr. Shapiro's *ipse dixit*.  Plaintiff posits that Daubert requires the Court to evaluate the expert's opinion for reliability by considering several factors lacking in Dr. Shapiro's report.  These are the verifiability of the expert's theory or technique, the error rate inherent therein, whether the theory or technique has been published and/or subjected to peer review, and its level of acceptance within the scientific community.  Daubert, 509 U.S. at 593-94.  Furthermore, Plaintiff argues that Dr. Shapiro's specialized knowledge in nephrology (study of kidney functions) renders him incapable of possessing the knowledge, skill, experience or education to opine about the retinal effects of diabetes or of osteoporosis.  See Ed Peters Jewelry Co., Inc., v. C & J Jewelry Co., Inc., 124 F.3d 252, 259 (1st Cir. 1997).

Defendants counter that Rule 705 of the Federal Rules of Evidence provides that "[t]he expert may testify in terms of opinion or inferences

Civ. No. 06-1019 (PG)                                                    Page 3

and give reasons therefore without first testifying to the underlying facts or data, unless the court requires otherwise" and that "the expert may in any event be required to disclose underlying facts or data on cross-examination." FED. R. EVID. 705. Defendants argue that Plaintiff chose not to depose Dr. Shapiro and thus waived their right to discover the facts on which the expert relied to form his opinion until cross-examination. Moreover, Defendants point to Dr. Shapiro's credentials as a reputable doctor, who is Board Certified by the American Board of Internal Medicine and has for many years been an attending hospital physician and professor of clinical medicine as well as an author in many peer reviewed publications. (Id. at 4-8). As we shall now explain, this Court agrees with Defendants.

The trial Court must determine that the proffered expert witness is "qualified as an expert by knowledge, skill, experience, training, or education" before permitting his testimony to be presented to the jury. Gaydar v. Sociedad Instituto Gineco-Quirurgio y Planificacion Familiar, 345 F.3d 15, 24 (1st Cir. 2003)(quoting Fed.R.Evid. 702). This gatekeeping function requires the trial court to determine, given the proffered expert's background, whether the scientific, technical, or other specialized knowledge he offers "will assist the trier better to understand a fact in issue." Id. (quoting United States v. Sepulveda, 15 F.3d 1161, 1183 (1st Cir. 1993). The First Circuit has noted that experts "come in various shapes and sizes" and that there "is no mechanical checklist for measuring whether an expert is qualified to offer opinion evidence in a particular field." Santos v. Posadas de P.R. Assocs., 452 F.3d 59, 63 (1st Cir. 2006). However, a testifying expert "should have achieved a meaningful threshold of expertise in the given area." Prado Alvarez v. R.J. Reynolds Tobacco Co., Inc., 405 F.3d 36, 40 (1st Cir. 2005). That a "witness qualifies as an expert with respect to certain matters or areas of

Civ. No. 06-1019 (PG)                                                    Page 4

knowledge, [does not necessarily mean] that he or she is qualified to express expert opinions as to other fields." Nimely v. City of New York, 414 F.3d 381, 399 (2d Cir. 2005).

In the medical context, the First Circuit has ruled that the proffered expert physician need not be a specialist in a particular medical discipline to render expert testimony relating to that discipline. Gaydar, 345 F.3d at 24-25 (holding that a general practitioner could testify about ectopic pregnancies even though he was not a gynecologist or obstetrician); see also Mitchell v. United States, 141 F.3d 8, 15-16 (1st Cir. 1998) (allowing an internist with specialties in hematology and oncology to testify about patient's colonoscopy even though not a gastroenterologist). "The fact that the physician is not a specialist in the field in which he is giving his opinion affects not the admissibility of his opinion but the weight the jury may place on it." Payton v. Abbott Labs, 780 F.2d 147, 155 (1st Cir. 1985).

Dr. Shapiro is well-qualified to testify as to Plaintiff's general condition as well as to the retinal and other secondary effects of diabetes. Dr. Shapiro is Board Certified by the American Board of Internal Medicine with a subspecialty in Nephrology and is a reputable attending hospital physician, professor of clinical medicine, and author of peer reviewed articles. Internal medicine is the branch and specialty of medicine concerning the diagnosis and non-surgical treatment of diseases in adults, especially of internal organs. Internal medicine sub-specialists like Dr. Shapiro may focus their practice on their particular sub-specialty but may also treat a broad range of diseases and practice general internal medicine. Like the expert in Mitchell, 141 F.3d 8, 15-16, an internist who testified on a sub-specialty other than his own, Dr. Shapiro is similarly capable of testifying on Plaintiff's general condition, eye sight and osteoporosis, especially when these health problems arise in relation to

Civ. No. 06-1019 (PG)                                                  Page 5

diabetes, a chronic disease well-within Dr. Shapiro's area of expertise as a nephrologist. The generally accepted methodologies of the internist are a patient's medical history and physical examination, both undertaken by Dr. Shapiro and not presenting a novel medical theory or technique requiring additional justification.

Federal Rule of Evidence 702 has been interpreted liberally in favor of admission of expert testimony and, as such, expert witnesses need not have overly specialized knowledge to offer opinions. Levin v. Dalva Brothers, Inc., 459 F.3d 68 (1st Cir. 2006). Once the trial court has established the expert's reliability, it is up to the opposing party to examine the factual basis of the expert's opinion and to expose its flaws through cross-examination or competing expert testimony. United States v. Mooney, 315 F.3d 54, 63 (1st Cir. 2002). Flaws in the factual bases underlying the expert's opinions affect the weight and credibility of his or her testimony, not its admissibility. See Mitchell, 141 F.3d at 17.

Plaintiff's Motion in Limine to exclude Dr. Shapiro is therefore **DENIED**.

**II. Plaintiff's Motion in Limine to Exclude Any Reference to Plaintiff's Eyesight (Docket No. 91)**

Plaintiff argues that Defendants waived any claim regarding Plaintiff's eyesight as a factor in the accident by choosing not to raise it as an affirmative defense in their amended answer to the complaint. Torres v. Kmart Corp., 233 F. Supp 2d 273, 285 (D.P.R. 2002); Fed. R. Civ. P. 8(c). Plaintiff also argues that neither of Defendants' expert witnesses Dr. Shapiro, a nephrologist, nor Dr. Marc H. Appel, an orthopedic surgeon, are qualified under Daubert precepts to make any reference to her eyesight because they do not possess the knowledge, skill, experience or education to testify about her eyesight. Alternatively, Plaintiff posits

Civ. No. 06-1019 (PG)                                                 Page 6

that any testimony regarding her eyesight should be excluded under Federal Rule of Evidence 403 because its probative value is substantially outweighed by the risk of unfair prejudice it creates.  See FED. R. EVID. 403.

Defendants counter that Dr. Shapiro is a Board Certified internist and that such doctors are trained to solve puzzling diagnostic problems and to handle severe chronic illnesses.  They argue that internists bring to patients an understanding of effective treatment of common problems of the eyes, ears, skin, nervous system and reproductive organs.  Defendants also point out that reference to Plaintiff's eyesight is made in most of Plaintiff's medical records and that any doctor or medical practitioner has the ability to read a medical record, understand and transmit its contents.  This Court agrees with Defendants.

First of all, the notion that Plaintiff's eyesight is an affirmative defense waived by Defendants for failure to raise it in the amended answer to the complaint is misguided.  Defendants state in their amended answer, as an affirmative defense, that "damages allegedly suffered by plaintiff are the result of plaintiff['s] own fault and/or negligence." (Docket No. 38 at 5).  The issue of Plaintiff's eyesight concerns whether she was negligent in knowingly exposing herself to the risks of slipping and falling as an individual with impaired vision.  This is an issue covered in Defendants' amended answer alleging that Plaintiff's damages are due to her own fault and/or negligence.  This is also an issue specifically arising through the process of discovery and not in the pleading stage.

As previously explained, Dr. Shapiro is well-qualified to testify on the subject of Plaintiff's vision impairment due to diabetic complications. As an internist, he need not possess specialized knowledge in ophthalmology to opine about the general state of her vision, especially as it relates to the unfortunate effects of advanced diabetes.  See Gaydar, 345 F.3d at 24.

Civ. No. 06-1019 (PG)                                                  Page 7

Flaws in the expert's facts or methods on which he based his opinion will have to be exposed by the opposing party through cross examination or competing expert testimony.  Finally, admitting Defendants' expert testimony does not create a risk of unfair prejudice by confusing or misleading the jury because it is conjecture masquerading as an objective assessment of Plaintiff's eyesight.  Dr. Shapiro's training and experience allows him to present an objective assessment of Plaintiff's general condition, including her eyesight, as he is a reputable internist with a sub-specialty in nephrology and is not a career court expert, which would give us pause to question his objectivity.  Since his expertise on this subject may assist the jury understand a fact in issue, it is improper to exclude any and all reference to Plaintiff's eyesight.  See id.

Plaintiff's Motion in Limine to exclude any reference to her eyesight is therefore **DENIED.**


**III. Plaintiff's Motion in Limine to Exclude Defendants' Orthopedic Expert Witness Dr. Marc H. Appel (Docket No. 104)**

For similar reasons set forth in Plaintiff's motion to exclude Dr. Shapiro, Plaintiff argues that Dr. Marc H. Appel's expert opinion is unreliable: it does not contain a reliable scientific basis from which to verify his conclusion that the majority of Plaintiff's impairment (immobility) is secondary to her medical condition (diabetes).  For similar reasons previously mentioned in this Court's decision to deny Plaintiff's motion to exclude Dr. Shapiro, Dr. Appel's record and trial testimony meet Daubert standards.  Dr. Appel is a reputable orthopedic surgeon who employed generally accepted methods of reviewing the patient's medical history and conducting a physical examination when he issued his opinion assigning a percentage of disability to Plaintiff's fall versus a preexisting medical condition.  Plaintiff may challenge flaws in his

Civ. No. 06-1019 (PG)                                                Page 8

analysis in cross-examination or by presenting competing expert testimony.

Plaintiff's Motion in Limine to exclude Dr. Appel is therefore **DENIED**.

**IV. Defendants' Motion in Limine to Exclude Plaintiff's Expert Witnesses Gerri Penachio and Francisco E. Martinez (Docket No. 131)**

Defendants argue that the expert witness report prepared by Plaintiff's Life Care Planner, Gerri Pennachio, is inadmissible because it is directly influenced by the opinions and conclusions of Plaintiff's expert witness Dr. Jaime Zorba whom Plaintiff admitted does not meet <u>Daubert</u> standards. Defendants also argue that the expert report prepared by economist, Francisco E. Martinez, is directly related to Pennachio's conclusions and is therefore also plagued by insufficient standards. As a result, Defendants argue that the probative value of their testimony is substantially outweighed by the danger that said testimony might cause unfair prejudice against the opposing party, confuse the issues in the minds of the jurors, and/or mislead the jury. This Court agrees and exercises its right to exclude prejudicial evidence in accordance with Federal Rule of Evidence 403. <u>Fed. R. Evid. 403</u>.

Defendants' Motion in Limine to exclude Gerri Penachio and Francisco E. Martinez is therefore **GRANTED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, August 1, 2007.

                                        S/JUAN M. PEREZ-GIMENEZ
                                        U. S. DISTRICT JUDGE